## Samuel Boyce v. William Danz.

*Names : Identity.*   The use of different names by a party is immaterial where the question is one of identity merely, and the identity is clearly established.

*Names : Idem sonans.*   Whether or not the names "*Boyce*" and "*Bice*" are sufficiently identical in sound to make the rule of *idem sonans* applicable:— *Quære ?*

*Pre-emption laws : Aliens : Declaration of intention.*   One of foreign birth who is otherwise duly qualified, is entitled under the pre-emption laws, after having in due form declared his intention of becoming a citizen, and before becoming fully naturalized, to file and maintain a pre-emption claim.

*Settlement: Possession.*   The settlement upon the land required by the pre-emption laws is that of a qualified person; and the fact that one of foreign birth had been in possession prior to the date of declaring his intention to become a citizen would not preclude him from pre-empting the land of which he continued in possession; and his settlement would be considered as commencing with the date of such declaration of intention.

 The fact that one who had thus been in possession stated in his claim that he settled and improved the land at the date of his first taking possession, where he has otherwise complied with the law as in case of a settlement made at the date of his becoming qualified by declaring his intention of becoming a citizen, will not invalidate his pre-emption.

*Res adjudicata : Land office : Register and receiver.*   The action of the register and receiver of the United States land office in accepting the proofs furnished by a pre-emptioner as satisfactory, and receiving his money and issuing to him the usual duplicate, is a judicial determination of his rights, which is conclusive in all collateral proceedings.

*Review : Commissioner of land office : Ex parte proceedings.*   Whether or not the commissioner of the land office has any authority under the statute to review and reverse the action of the register and receiver where there is no adverse claim under the pre-emption laws, his action, relied upon in this case, in exercising such right without notice to the party concerned, and thus over-turning a formal adjudication without the privilege of a hearing, was contrary to the first principles of right; and moreover it was founded on a mistake of the facts.

*Equity jurisprudence : Patentee : Trusts.*   A court of equity may in a proper case adjudge the patentee of lands to hold as trustee for one having greater equities.

*Laches : Possession.*   A delay of five years by a party in possession in filing a bill to obtain the legal title will not bar his equity where nothing has been lost by the other party in consequence.

 This case and *Campau v. Van Dyke, 15 Mich., 371,* distinguished.

*Heard January 8.     Decided April 8.*

Appeal in Chancery from Wayne Circuit.

*Divine & Wixson* and *C. I. Walker,* for complainant.

*Moore & Griffin* and *Theodore Romeyn,* for defendant.

COOLEY, J.

The bill in this case is filed to have a certain parcel of
land which has been patented by the United States to the
defendant, decreed to be equitably the property of the com-
plainant, and to be held by the defendant in trust for him.
The complainant's rights are rested upon the pre-emption
laws of the United States, while the defendant relies upon
his patent, and upon certain defects in complainant's claim
which are supposed to defeat it.

The facts in the case, as we find them established by
the evidence, are as follows: Complainant went upon the
premises, which he found unoccupied, some time in Febru-
ary, 1857.   The land then belonged to the United States,
and was subject to pre-emption settlement, and complain-
ant was in all respects qualified to make such a settlement,
except that, being of foreign birth, he had not become nat-
uralized or declared his intention so to do.   On the 5th
of March, 1857, however, he declared his intention in due
form, but in the name of Samuel Bice, which he seems
sometimes to have gone by.   On the same day he filed his
pre-emption claim to this land.   Within the same month
he completed a log house on the land, and took his father
and mother to live with him in it.   On the 31st of March,
1857, defendant entered the same land at the land office,
having at the time notice of complainant's occupation and
claim.   On March 1, 1858, complainant paid for his land,
having previously furnished to the register and receiver of
the land office at Detroit the proofs to their satisfaction of
his right as a pre-emptioner.   A duplicate in evidence of
his right to a patent was then issued to him.   On October
18, 1858, the commissioner of the general land office wrote
to the register and receiver at Detroit that complainant's
proofs were defective on certain points specified, and that
additional evidence must be produced.   It was not shown
that this letter was ever brought to the notice of complain-
ant, and he testified that it never was.   Three years later

the entry of the defendant was cancelled by the commissioner, but on May 5th, 1862, the commissioner wrote to the register and receiver that "it appears that when Mr. Boyce made his entry, March 1, 1858, Mr. William Danz was residing on this land, and that he, in fact, was the first settler," and adding that Danz's entry was unadvisedly cancelled; that his proofs and showing at the office justified his reinstatement, and that Mr. Boyce's entry was accordingly cancelled. There was no showing and no claim in this suit that the statement in the commissioner's letter regarding the residence of Danz on the land when complainant made his entry had any foundation in fact, and it was a mistake beyond question. Defendant, however, was now recognized at the general land office as the lawful claimant to the land, and on July 10, 1862, a patent was issued to him. Complainant in the meantime had continued in possession of the land, and had made valuable improvements upon it.

These facts would appear to show an equitable right in complainant superior to that of the defendant, and to entitle him to the relief he seeks, unless his failure to comply with some requirements of the pre-emption laws precluded him from their benefits; and it now becomes necessary to determine whether such a failure had occurred. As it may fairly be assumed that the counsel for defendant have in their argument suggested all the defects that are supposed to exist, we may confine our attention to the propositions relied upon by them, taking it for granted that they direct us to all the weak points in complainant's case.

The first objection relied upon is the discrepancy between the name made use of by complainant in declaring his intention to become a citizen, and that in which he made his entry and brings this suit. The names "Boyce" and "Bice," it is said, are not *idem sonans*, and presumptively belong to different persons. We have already said that the evidence shows them to have been both used by complainant, and as this is a question of identity, and the identity

is established to the satisfaction of the court; this objection would seem to be removed. If the evidence had left the identity in doubt, it might be worthy of consideration whether the two words as commonly pronounced, especially by foreigners, are not sufficiently identical in sound to make the rule of *idem sonans* applicable; but we need not discuss the point on this record.

A further objection is that complainant never became a citizen; and his failure to take all the steps necessary to that end, it is said, is in contravention of the policy of the pre-emption laws, and deprives him of all claim upon the equitable consideration of the court. The policy of the pre-emption laws is to be learned from the laws themselves, and in terms they confer rights upon those who are citizens, or declare their intention to become such, who occupy the land and make the necessary proofs and payment. No officer and no court has any authority to add further conditions; but it is a circumstance worthy of remark that by force of our constitution and laws the complainant, by his declaration of intention and subsequent residence in the state, became entitled to exercise the elective franchise and to hold office, and was vested with nearly all the rights and privileges of a naturalized citizen; and he might well suppose, as most persons would be likely to under such circumstances, that any thing further was not called for. It may not be an unreasonable inference that the pre-emption laws have had the state laws of this and other states in view, and that it was not thought important or politic to require more from pre-emptioners than was required to make them citizens of some of the states, and participants in congressional and other elections.

It is objected further that complainant did not perfect his right by payment within twelve months after his settlement, as was required by the pre-emption laws. The particular law referred to is the *Act of September 4, 1841*, § *15* of which (*Bright. Dig., p. 474*, § *88*) provides that whenever any person shall settle and improve a tract of land

subject at the time of settlement to private entry, and shall intend to purchase the same under the provisions of the act, he shall, within thirty days after the date of settlement, file with the register of the district a written statement describing the land settled upon, and declaring the intention of such person to claim the same under the provisions of said act; and that within twelve months after settlement he shall make proofs as by the act required, and also pay for the land; and in case of any failure the land shall be subject to entry by any other person. As already stated, complainant went upon the land in February, 1857, but he had not then declared his intention to become a citizen, nor did he make that declaration until the fifth day of the next month. Before that day it was not competent for him to file a pre-emption claim or to claim any benefit under the act. His claim was in fact filed on the fifth day of March, the same day he declared his intention to become a citizen, and the proofs are clear that within twelve months from that time he made his proofs and paid for the land. The defect in his right, then, if any, must be either: *first,* that he was in possession of the land before he was competent to make a pre-emption claim; or, *second,* that in his claim he stated that "on the 20th day of February, 1857, he settled and improved" the land now in dispute, and is consequently estopped from dating the commencement of his settlement under the act at any later day. On the first ground he certainly could not be precluded. It would be an extraordinary construction to put upon the pre-emption laws that one should be wholly excluded from their benefits because he had already been for a year in possession of the land, but not during that time qualified to take the benefit of their provisions. The settlement contemplated, as it seems to us, must be the settlement of a qualified person; and that of the complainant must consequently be deemed to have begun on the 5th of March, 1857. And we may reasonably suppose this to have been the understanding of the complainant, who

appears to have acted in strict accordance with that view, though in filing his claim he may have thought it necessary to state with accuracy the time when he took possession and began improvements.

If we are correct in this, the case of complainant would appear to be made out; but if we err in our conclusion, the fact still remains that the register and receiver of the land office have accepted the proofs furnished by complainant as satisfactory; and have taken his money and issued the usual duplicate. And the question would then be presented whether their conclusion is not binding upon us, even though we might regard it as erroneous.

Under the statute the proofs are to be made to the satisfaction of these two officers.—*Stat. 4 Sept., 1841,* § *12 ; Bright. Dig., p. 473,* § *85.* These officers act judicially in passing upon the proofs.—*Wilcox v. Jackson, 13 Pet., 498 ; Lytle v. State, 9 How., 333,* and we have not been referred to any statute which authorizes the commissioner of the general land office to review and reverse their action, in cases like this, where there was no adverse claim under the preemption laws. And if he had the power, it would be contrary to the first principles of right that he should exercise it without giving notice to the party concerned, and thus vacate a formal adjudication without the privilege of a hearing. And the action of the commissioner in this case appears to have been not only entirely *ex parte,* but also to have been founded upon a mistake as to the facts.

It is not disputed by defendant that a court of equity may in a proper case adjudge the patentee to hold as trustee for one having greater equities, when a proper case is made out. The authority has often been asserted by the supreme court of the United States, and the principles on which it is to be exercised are well understood. It will be sufficient in this case to refer to a few of the cases.—*Bagnell v. Broderick, 13 Pet., 436 ; Garland v. Wynn, 20 How., 8; Lytle v. Arkansas, 22 How., 193 ; Clements v. Warner, 24 How., 394; Lindsey v. Hawes, 2 Black., 559 ; Stark v*

*Starrs, 6 Wall., 402; Johnson v. Towsley, 13 Wall., 72; Frisbie v. Whitney, 9 Wall., 196.*

The defendant, however, insists that complainant has been guilty of *laches,* and has lost his rights thereby, and he refers to *Campau v. Van Dyke, 15 Mich., 371,* as furnishing support to this position.   The two cases have no analogy.   There a party out of possession attacked a decree in chancery for fraud, after a delay of more than six years, which had been prolonged until the principal actors in the suit in which the decree had been rendered had been taken away by death, and until in consequence explanations had become impossible. The court, it is believed justly, required satisfactory excuse for the delay, and none was given.   In this case the complainant has all the time been in the enjoyment of his property, and was therefore not called upon to exercise the same diligence which might have been required of one who was kept out of the rights he claimed; and we find nothing in the case to satisfy us that defendant has been injured by the delay.   When complainant's right was assailed he defended it, and when the legal defense was found insufficient, he resorted to a court of equity.   He has not been as diligent as he might have been, but a delay of five years by a party in possession in filing a bill to obtain the legal title cannot be regarded as sufficient to bar his equity, where nothing has been lost by the other party in consequence.

The decree of the court below appears to be correct, and it must be affirmed, with costs.

GRAVES, CH. J., and CAMPBELL, J., concurred.

CHRISTIANCY, J., did not sit in this case.