SARAH J. ALLEN v. WARREN W. CADWELL ET AL.

*School-land certificates—Homestead rights—Notice by possession.*

1. Homestead rights can be claimed in land held under a part-paid school-land certificate from the State land-office.

2. The Commissioner of the State land-office has authority to replace a certificate of purchase covering several parcels of land with certificates for each, if he is satisfied that the public trust fund will not thereby be injured. *Held,* that he is only expected to protect the State's interest; he has no concern with those of individuals, for his acts cannot determine their rights.

3. A State patent to school-lands is evidence of legal title, but it cannot cut off private rights, the holders whereof may assert them in equity. But a bona fide purchaser or incumbrancer of the patented land will be protected.

4. Actual possession of real estate is notice, to purchasers or incumbrancers, of the rights of those in possession. It was therefore *held* in the case of a wife living with her husband on land which they had occupied under a certificate of purchase from the State, but which certificate the husband had assigned without her concurrence to another person who obtained a patent to the land and mortgaged it, —that the mortgagee was chargeable with notice of the wife's homestead rights, and could not be regarded as a bona fide purchaser.

5. The purchaser of land that is in possession of some one else than the grantor cannot presume that the occupant has no adverse rights, or that such rights are cut off by the conveyance.

6. The purchaser or mortgagee of land that is occupied by some one else than the grantor or mortgager is bound to inquire of the occupant as to the latter's rights, and if he does not, is chargeable with notice of them.

7. A patent that has been taken out by the assignee of a certificate of purchase is void as between the patentee and the wife of the assignor if she had homestead rights in the land and did not join in the assignment.

Appeal from Ingham. (Gridley, J.) June 20.—Oct. 8,

FORECLOSURE bill. Complainant appeals. Affirmed.

*Olds & Robson* for complainant.

*Russell C. Ostrander* for defendant Mary Cadwell.

CHAMPLIN, J. This was a bill to foreclose a mortgage given by the defendants Warren W. and Laura A. Cadwell, who are husband and wife, to complainant, to secure the payment of a money obligation (bond) executed by defendants Warren W. and Marvin S. Cadwell, who are brothers. Mary Cadwell, wife of Marvin S. Cadwell, was brought in as a defendant in possession of a part of the mortgaged premises, and is the only defendant who answered. In brief, her answer claims a homestead in lot one, block seventy-three, Lansing, a part of the mortgaged premises; that she had never parted with her interest therein; and asks that the bill as to that parcel and as to herself be dismissed.

No proofs were taken, but a stipulation was filed in the cause as follows:

" It is hereby stipulated and agreed by and between the parties hereto, by their respective solicitors:

*First.* That the facts as set forth in the bill and answer filed in this cause are true.

*Second.* That the complainant, at the time the loan was made, had no actual knowledge of the special matter of defense set forth in defendant's answer.

*Third.* That the State land-office has never required the signature of the wife to the assignment of school-land certificates, and has never inquired whether or not school lands transferred by such assignments have been used as homesteads, but patents have issued upon the sole assignment of the party holding the certificate of purchase.

The admitted facts show an actual occupancy of the premises in question by Marvin S. and Mary Cadwell and their family for a period of thirteen years previous to the giving of the mortgage to complainant. It is now more than eighteen years that it has been their home. The premises were held under a school-land certificate, part-paid. In 1879, without the knowledge of the wife, the husband, Marvin S. Cadwell, at Lansing, to procure money with which to carry on a lawsuit in Clinton county to which himself and his bro-

ther Warren W. were parties, assigned his certificate to the brother, furnished him money to pay the balance due the State, and upon payment a patent for the lot in question and other lands conveyed by the mortgagee, was issued to Warren W. Cadwell. It was directly after this that the bond and mortgage were made to complainant, at Detroit. Nothing of this was known to defendant Mary Cadwell, who on the day the mortgage was given, was occupying the premises as she had been doing for years.

After this, the defendant Marvin S. Cadwell deserted his wife, went to Chicago, and filed there a bill for divorce against his wife. This was answered by the wife. It was after hearing that her husband was out of the State, that Mrs. Cadwell began making inquiries as to the property,—when interest would become due to the State, etc. ; she then first learned of the assignment and mortgage. The parcel claimed as a homestead is one lot, according to the plat of Lansing, worth with the dwelling-house less than fifteen hundred dollars.

· The circuit judge was of opinion that defendants Mary and Marvin Cadwell had a homestead interest in the property in dispute, and that as to lot 1, block 73, complainant had acquired no lien by her mortgage. Decree was entered accordingly, and complainant appeals.

Since the case of *McKee v. Wilcox* 11 Mich. 358, it has been the settled law in this State that a homestead may be claimed in land of which a party is in possession under a contract of purchase. There is no reason why the principles of that case should not apply to a contract of purchase from the State, as well as from an individual. Under these contracts with the State, many advantages are secured which do not pertain to ordinary contracts of purchase from individuals. So long as the interest and taxes are paid, the balance of the principal, due on the purchase, is payable at the holder's option. It may be levied upon and sold under an execution. *Kercheval v. Wood* 3 Mich. 509. It may be mortgaged, and the purchaser at the execution or mortgage sale is deemed the assignee of

the contract. How. Stat. §§ 5266, 5269, 5335. The certificate entitles the purchaser to possession, and is sufficient evidence of title to enable the purchaser to maintain trespass or ejectment, and it may be recorded in the same manner as deeds. How. Stat. §§ 5279, 7532. Under the admitted facts, the defendant Mary Cadwell was possessed of a homestead interest in lot 1, block 73, at the time of the transfer of the certificate from Marvin S. to Warren W. Cadwell, and at the time of the execution of the mortgage to complainant. The complainant's counsel contends that the patent should be sustained because it was issued in accordance with the regular practice of the State land-office. The statute authorizes the surrender of old certificates of purchase where they cover more than one description, and new ones to be issued for the different parcels when the commissioner of the State land-office is satisfied that no injury to the particular trust fund may be effected thereby. It is no part of his official duty to inquire whether private parties, interested in the lands, will be injured or not by his action. He determines no rights of such parties by his acts. The interests he seeks to protect are those of the State; and when satisfied upon that point, he is authorized to "divide" the certificate. The patent which the Governor is authorized to issue is evidence of title. It cannot cut off private rights, but it conveys the legal title from the State to the patentee. Whoever has a better equitable right may show it in equity. *Romain v. Lewis* 39 Mich. 233. The patent issued in this case vested the legal title in the land in Warren W. Cadwell, and a bona fide purchaser for value or incumbrancer from him will be protected.

The controversy in this case turns upon the question whether complainant stands in the position of a bona fide incumbrancer. The admitted facts are that she had no actual knowledge of the special matter of defense set forth in defendant's answer. At the same time it is admitted that at the time she made the loan defendant Mary Cadwell was in the actual possession and occupancy of the lot in dispute as the homestead of herself and husband. In *Woodward v. Clark* 15 Mich. 104, it was held that a purchaser from a vendor who had sold the

land by contract was chargeable with notice of the equities of such contract purchaser, by the fact that he was in possession of the land, which the court said was of itself notice. In *Hommel v. Devinney* 39 Mich. 522, the defendant claimed to be a bona fide purchaser, and therefore entitled to protection. The court said: "Complainant was in the actual possession of the premises at the time defendant purchased, and although the deed to complainant was not then on record, yet defendant could not but have known that the complainant claimed to have some interest in the premises. He should, therefore, have called upon her and ascertained the extent of the interest which she claimed therein, and from what source she derived her title; failing so to do, he is chargeable the same as though he had called upon her and ascertained fully all the facts." See also *Russell v. Sweezey* 22 Mich. 235.

The law is too well settled to need any extended citations of authorities, that actual possession of real estate is notice to purchasers or incumbrancers, of the claim of those in possession. 2 Smith's Lead. Cas. 180, and authorities cited; 1 Jones on Mortg. §§ 255, 591, 592.

The complainant is chargeable with notice of the homestead rights of defendant Mary Cadwell, and cannot be held to be a bona fide purchaser. Where parties other than the vendor are in the actual possession of premises conveyed, his deed or patent affords no information of the rights of those in possession, and a vendee or mortgagee has no right to presume, from the fact that their vendor or mortgager has the legal title, either that there are no parties in possession claiming adversely, or, if in possession, their rights are cut off by sale or mortgage from the holder of such legal title. The complainant's duty was to inquire of the defendant in possession what her rights were; and neglecting this duty, she is chargeable with all the information she would have obtained if inquiry had been made. She occupies no better position than her mortgager, Warren W. Cadwell, and as between him and Mary Cadwell, in equity the patent was void, because the defendant Mary Cadwell did not join with her husband in assigning the certificate of purchase to him.

The decree of the circuit court is correct, and must be Affirmed with costs.

COOLEY, C. J. and SHERWOOD, J. concurred.

CAMPBELL, J. In the court below the mortgage in suit was held void, as against defendant Mary Cadwell, on the ground that at its date she ,was in possession of lot 1 as a homestead, as wife of Marvin Cadwell, and did not join with him in his transfer of the State land-office [certificate] to Warren Cadwell, to whom the patent was issued.

It appears that complainant lent her money in good faith, on the strength of the State patent, and there is no claim that she had actual notice of any right or claim of Mrs. Cadwell, or actual knowledge of her possession. The only ground of defense is that the possession is notice of her claim, and that the claim was valid.

I do not doubt that as to persons having actual knowledge of a homestead claim, it may exist in lands before patent, subject to the balance due the State. But I do not feel so clear that where husband and wife have no family of children living with them, the wife can insist that her domicile is the family home, when her husband, who is head of the family, sees fit to change it. I do not place my action in this case on that ground, but I think it open to serious question.

In my view the complainant cannot be affected by any supposed equities which were actually unknown to her, and which originated before the patent issued. The law has been uniformly laid down in this State, as it has been by the courts of the United States, that the patent conveys the legal title, and that if there are any equitable claims against the land they can only be worked out by holding the persons claiming interests under the patent as trustees.

I have found no authority for holding that any one is bound to look behind the patent to see whether it was issued to the right person, or on proper papers or assignments. If any one gets out a patent, with knowledge of the adverse rights of others, it is plain enough that he should take sub-

ject to their rights. But the fact that the patent has issued to the wrong person, or on improper proofs, in no way affects subsequent purchasers or incumbrancers, who have a right to assume that the patent was lawfully granted. If this patent was not properly issued to Warren Cadwell, it was only because the transfer from Marvin Cadwell required his wife's signature. But it has been twice held by this Court that the issue of a patent to a person who has no legal transfer whatever from the holder of the certificate does not affect an honest incumbrancer or grantee who does not have knowledge of that fact. In *Damouth v. Klock* 29 Mich. 289, a patent was issued to the widow of the purchaser without any authority whatever to represent the estate, and in direct wrong of the heirs. But it was held, nevertheless, that this fact, which would necessarily appear if search was made in the Land-Office, did not affect a subsequent mortgagee. So in *Austin v. Dean* 40 Mich. 386, it was expressly held, as it has been held in other cases in this State, that no one could be protected as a bona fide purchaser under a forgery. But it was further held that when that forgery was prior to the patent, the purchasers from the patentee were not affected by it, and would hold if they had no actual notice of it.

All of the cases which have been decided by us heretofore, holding persons having the patent title as trustees for those who have been defrauded, have involved actual notice of the rights set up. Such was the case in *Boyce v. Danz* 29 Mich. 146, decided at the same term with *Damouth v. Klock*. *Davis v. Filer* 40 Mich. 310 was also such a case. And in both *Damouth v. Klock* and *Austin v. Dean*, trusts were supported against all but the bona fide purchasers or incumbrancers.

It is very certain that Mrs. Cadwell's claim is no better than that of the heirs in the other cases. Nothing had been done in either of those cases which bound any one; while here the land-officers had before them an assignment from the purchaser which was good on its face, and was genuine, however it may have lacked the concurrence of the wife.

The distinction between patents and other conveyances is a

material one. The land in question is such that all title must originate with the State authorities. The patent is the beginning of the legal title, and unless—which has never been held—the purchaser is in all cases bound by knowledge of what lies behind it, then Warren Cadwell, and such rights as Warren Cadwell has created since its issue, are all that need be regarded.

The doctrine of constructive notice has been carried so far as to work fraud nearly as often as it prevents it. The fact of possession can only be known to those who see the property they purchase, and the policy of our laws, which make registry presumably correct, and the almost universal practice of purchasing from the registry, is not very consistent with the extreme application of the other rule. To make possession constructive notice to a person who is ignorant of it, concerning claims which can only be known by inquiry, is adding construction on construction, and makes it unsafe for any one at a distance to deal in lands at all. I am not prepared to say that we have not gone far enough to do this, where the possessory rights arise under a legal title. But to hold that notice of such claims can be held by mere construction, when the legal title originates subsequently, is, I think, unwarranted by either principle or recognized authority.

I think the court below erred in holding Mrs. Cadwell's claim superior to complainant's, and that it should not have been maintained, and should to that extent be reversed.