FOSTER *v.* WHELPLEY.

1. State Lands—Purchase—Partial Payment—Execution.
    A purchaser's undivided interest in part-paid primary school land is subject, under 1 Comp. Laws 1897, § 1332, to levy and sale on execution.

2. Same—Estates by Entirety—Fraudulent Conveyances.
    Where the stockholders in an insolvent bank were assessed to pay depositors, the undivided interest of one of them in land which, when the bank became insolvent, was held by him under a part-paid certificate from the State, the other undivided interest having been assigned by him to his wife, was properly subjected to the payment of the assessment, notwithstanding the fact that his purpose in assigning the interest in the certificate was to create an estate by the entirety, and that a patent was issued, after his liability as stockholder accrued, to him and his wife jointly.

Appeal from Eaton; Smith, J. Submitted February 6, 1900. Decided March 13, 1900.

Bill by Seymour Foster, receiver of the People's Savings Bank of Lansing, against Solon R. Whelpley and Evaline H. Whelpley, in aid of execution. From a decree for complainant, defendants appeal. Affirmed.

*Russell C. Ostrander*, for complainant.

*Dean & Hooker*, for defendants.

Moore, J. In 1892, Solon R. Whelpley became a stockholder in the People's Savings Bank of Lansing, Mich., and as such stockholder drew dividends as they were declared by the bank until it became insolvent, and passed into the hands of the complainant as receiver, in July, 1896. After the bank failed, to pay the depositors, it was found necessary to make assessments against the stockholders. A decree was obtained by the receiver

against Mr. Whelpley in April, 1898, for $560.   An execution was taken out, and a levy made thereunder upon certain real estate, which it is now claimed is owned by Mr. and Mrs. Whelpley in entirety.   No sale of the land was made under the execution levy, but this bill was filed to reach the undivided one-half of the said real estate, and subject it to sale upon said execution levy.   From a decree in favor of complainant, the defendants have appealed.

The record shows that in 1854 the land in controversy was sold by the State to one Story, who paid only part of the purchase price.   A part-paid certificate was issued to Mr. Story, who, in 1861, sold the land to Mr. Whelpley, and assigned to him the certificate.   March 27, 1895, Mr. Whelpley assigned an undivided one-half interest in the certificate to his wife.   No other assignment was made by him to her.   At the request of Mr. Whelpley, preferred by his attorney, who was the brother of his wife, upon the payment of the balance due upon the certificate, $200, in February, 1897, a patent was issued by the commissioner of the land office to Mr. and Mrs. Whelpley, conveying the interest of the State in the lands.   The attorney returned the patent, with a request that the words "his wife" should be added after the names of the grantees, which was done by the land commissioner.

It is claimed on the part of the defendants that what was done by them was done in good faith, and without any intent to defraud.   It is said that in March, 1895, when Mr. Whelpley assigned an undivided one-half interest in the certificate to his wife, he owed no debts, and had the right to convey his property to her.   It is also said that he at that time was ill, and expected to die, and, for the purpose of placing the title in such a way that it should be absolute in her in case he died, he made this assignment, after consulting an attorney, supposing it would have that effect.   It is also claimed that, when the patent was issued, the $200 that was paid upon the property was furnished by Mrs. Whelpley, and the patent was taken in the way it was for the purpose of accomplishing

what was attempted to be accomplished by the assignment made in March, 1895, and that this was not a fraud upon the creditor. It is also claimed that, as Mr. Whelpley has never had the legal title to these lands, the complainant has mistaken his remedy. It is an answer to the last claim to say that, under the express provisions of the statute and the decisions of this court, the undivided interest which Mr. Whelpley had in the land prior to the issuance of the patent could be reached by execution. Section 1332, 1 Comp. Laws 1897; *Kercheval* v. *Wood*, 3 Mich. 509; *Allen* v. *Cadwell*, 55 Mich. 8 (20 N. W. 692).

It is not necessary for us to express any opinion as to whether, in view of the fact that Mr. Whelpley was a stockholder in a bank, and as such stockholder might become liable to the depositors under certain contingencies, he could, in March, 1895, convey his real estate to his wife in such form that it could not be reached should the contingency occur, for the fact remains that the assignment which he made left an undivided interest in the real estate in himself up to the time when the patent was issued. In April, 1898, a decree was rendered for a liability which accrued as early as July, 1896, against Mr. Whelpley, which it was his duty to pay. *Foster* v. *Row*, 120 Mich. 1 (79 N. W. 696). If it was not paid, any property owned by Mr. Whelpley, not exempt from levy and sale, could be reached by levy and sale. At the time the liability accrued, he owned an undivided one-half interest in this real estate, subject to a debt to the State of $200. According to his testimony, this real estate was worth from $1,800 to $2,000. In addition to that, he and his wife owned in entirety a homestead in the village of Grand Ledge. It may be conceded that Mr. Whelpley and his wife acted in the utmost good faith in bringing about a change in this title so that it could not be reached by this creditor, so as to relieve them of any moral turpitude; but what was done operated as a fraud in law against this claim. There is no claim that when the assignment

of March, 1895, was made, Mrs. Whelpley paid anything in consideration therefor. After this decree was obtained, Mr. Whelpley could not, without any consideration passing to him, cause the title to property worth nine or ten hundred dollars, which was then subject to levy and sale, to be so changed that it could not be reached by levy and sale. Such an act is, in effect, a legal fraud, whatever the motive which induces it. *Newlove* v. *Callaghan,* 86 Mich. 301 (49 N. W. 214); *Michigan Beef & Provision Co.* v. *Coll,* 116 Mich. 261 (74 N. W. 475.)

It is said the $200 paid when the patent issued belonged to Mrs. Whelpley, and that her property cannot be reached to pay Mr. Whelpley's debt. Complainant seeks to reach only the half of this property which was in Mr. Whelpley when he obtained his decree. As Mrs. Whelpley had an undivided one-half interest in the property, it was her duty to pay one-half the amount due the State in order to obtain a patent. When inquiry was made of her brother as to where the $200 came from, it was not answered very frankly. Mrs. Whelpley was not herself sworn. When her brother was asked, "Whose money did you pay at that time?" he replied, "I received the money from Mrs. Whelpley." In reply to an inquiry addressed to Mr. Whelpley, he said: "The money—the balance that was paid on the certificate—belonged to my wife. Part of it came from an aunt, and I gave her notes against a brother of hers, which had been accumulating interest." We do not think any injustice has been done Mrs. Whelpley.

The decree is affirmed.

MONTGOMERY, C. J., LONG and GRANT, JJ., concurred. HOOKER, J., did not sit.