### LIPP *v.* JACOBS.

1. FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY—STATUTES.

The requirements of 3 Comp. Laws, § 10203 (5 How. Stat. [2d Ed.], § 12864), relating to a *prima facie* case in suits begun by a bill in aid of execution, are met where plaintiff introduces the judgment in an action against a person exchanging property with plaintiff for fraudulent representations as to the exchanged property as alleged in the bill of complaint, the execution and levy, and the record thereof and the conveyance from plaintiff to the purchaser and her husband, and evidence tending to show that the whole of the consideration paid for the property conveyed by the deed was paid by the purchaser.

2. SAME—BILL IN AID OF EXECUTION—SUFFICIENCY OF ALLEGATIONS—RELIEF.

Where a judgment at law had been obtained for fraudulent representations as to exchanged property, a bill in aid of execution alleging that the purchaser caused the deed from plaintiff to run to the purchaser and her husband for the purpose of making them tenants by the entirety, so that the premises would not be subject to execution levy, and that title was so taken to hinder, delay, and defraud the creditors of the purchaser, and for the purpose of defrauding plaintiff out of her just dues and demands, and to prevent her realizing upon any judgment she might secure against the purchaser by reason of the fraud practiced upon plaintiff, was sufficient to warrant relief so far as the deed gave any title to the husband of the purchaser.[1]

3. SAME.

The mere fact that an execution creditor is herself the grantor in a deed does not preclude the maintenance by her of a bill in aid of execution against the purchaser.

4. SAME.

Evidence *held*, sufficient to show that the conveyance was made to the purchaser and her husband at the request of the purchaser.

---

[1] On condition precedent to equitable remedies of creditors in case of fraudulent assignment, see note in 23 L. R. A. (N. S.) 118.

5. SAME.

> Under 3 Comp. Laws, § 9167 (3 Comp. Laws 1915, § 12897), providing that all real estate of any debtor, including legal and equitable interests in lands acquired by parties to contracts for sale and purchase of land, including lands fraudulently conveyed with the intent to defeat, delay or defraud his creditors, shall be subject to execution where a contract for the exchange of real estate is entered into and one purchaser takes title to the exchanged property in the names of herself and husband for the purpose of defrauding the seller and other creditors, the interest of the purchaser may be subjected to execution.

Appeal from Lenawee; Hart, J. Submitted June 7, 1917. (Docket No. 11.) Decided September 27, 1917.

Bill in aid of execution by Clara C. Lipp against Carrie Jacobs and another. From a decree for plaintiff, defendants appeal. Affirmed.

*Baldwin, Alexander & Russell*, for plaintiff.

*James W. Helme*, for defendants.

STONE, J. The bill of complaint filed in this cause was in aid of execution. Prior to the 8th day of November, 1913, the plaintiff was the owner of a certain house and lot in the village of Blissfield, Mich., and the defendant Carrie Jacobs was the owner of a farm of 120 acres situated in Monroe county. On the date aforesaid the plaintiff and said defendant entered into a contract which was as follows:

"This contract, made and entered into this 8th day of November, 1913, by and between Carrie Jacobs, party of the first part, and Clara C. Lipp of the second part, witnesseth:

"Said first party, for and in consideration of said second party deeding, by warranty deed, the following described property, viz.: The south forty-eight (48) feet of lot No. seventeen (17) of Giles' addition to Blissfield village, according to a recorded plat thereof, and the further payment on March 1, 1914, of two

thousand ($2,000) dollars in cash and the execution
of a mortgage for eight thousand ($8,000) dollars
payable on or before five (5) years from March, 1914,
bearing interest at the rate of five (5%) per cent. per
annum, payable annually, with the privilege granted
to pay five hundred ($500) dollars or any multiple
thereof at any time, hereby agrees to convey by war-
ranty deed and furnish an abstract of title showing
a good merchantable title to the following described
property, to wit:  The west half of the southeast quar-
ter of the southeast quarter of section 34; also the
southeast quarter of the southeast quarter of said sec-
tion 34—both in town seven (7) south, range six (6)
east, in Summerfield township, Monroe county, Michi-
gan, and containing one hundred twenty (120) acres
of land, more or less, together with all and singular
the hereditaments and appurtenances thereunto be-
longing or in any wise appertaining.  Said first party
further agrees to install fourteen (14) stanchions in
barn, to repair outside entrance to house cellar, also
to repair roof on house, all without cost to second
party.

"It is mutually agreed that each of the parties here-
to shall pay all taxes for the year 1913 on the respect-
ive properties to be by them conveyed, and each party
shall on March 1, 1914, deliver to the other party a
proper receipt showing that such taxes have been by
them paid.  It is further agreed and understood that
said second party shall have the income from the ren-
tal until March 1, 1914, on the property deeded to first
party, and that first party shall accept title subject to
a certain lease to Stephen H. Leonard which said lease
expires April 1, 1914.

"In witness whereof, the respective parties hereto
have hereunto set their hands and seals this 8th day
of November, 1913.

"CARRIE JACOBS,
"First Party.
"CLARA C. LIPP,
"Second Party."

On the day of the date of this contract plaintiff exe-
cuted a deed of the house and lot.  At the request of
the defendant Carrie Jacobs, the deed was made to

her and her husband, Charles A. Jacobs, the other defendant, as husband and wife. Later Carrie Jacobs made a deed of her farm to plaintiff, who paid $2,000 in cash and gave back a mortgage in compliance with the contract. On the 28th day of May, 1915, plaintiff obtained a judgment in the circuit court for the county of Lenawee against defendant Carrie Jacobs for damages in the sum of $1,997.75 and costs, which costs were afterwards taxed at the sum of $100.95.

Counsel for plaintiff in their brief assert that the action was to recover damages resulting from fraudulent representations made by defendant Carrie Jacobs to plaintiff prior to and on November 8, 1913, regarding the farm afterwards conveyed to plaintiff. It is stated by the defendants' counsel that there was no evidence in the case in support of this assertion as to the basis of the judgment. We find the bill definitely makes the claim, and the same is not very distinctly covered by the answer. The circuit judge found in the instant case as follows:

"Plaintiff afterwards brought a suit on the law side of the circuit court for this county [Lenawee] against the said Carrie Jacobs, claiming fraud by the said Carrie Jacobs in the sale of said farm."

We find no evidence in the record upon this subject, and the certificate of the circuit judge was that the record contains the *substance* of all the evidence given or read upon the hearing. An execution was issued out of said court on said judgment, and a levy made on the house and lot, which had been conveyed by said plaintiff to the defendants; said levy having been made June 21, 1915.

The bill of complaint in this case was filed on the 3d day of September, 1915, against the defendants in aid of execution, and prayed that the title to the premises described in the bill may be decreed to be in said Carrie Jacobs, and that said Charles A. Jacobs be

decreed to have no interest therein whatever, and that the sheriff of said county be directed to proceed in the execution of said writ of *fieri facias,* and to advertise and sell the said lands and premises by virtue thereof in due form of law for the payment and satisfaction of said judgment of plaintiff, with interest and costs, and that the purchaser or purchasers at such sale take all the right, title, and interest of the said Carrie Jacobs in and to said lands. It is alleged in the bill of complaint that the said Charles A. Jacobs paid no portion of the purchase price of the said house and lot.

At the close of the plaintiff's proofs counsel for defendants moved to dismiss the bill, "on the ground that plaintiff had submitted no proofs that entitled her to a decree, and that a bill to aid execution was not the proper remedy." No proofs were offered on the part of the defendants. The case was heard upon pleadings and proofs offered by the plaintiff, and the court granted the relief prayed for. The defendants have appealed.

There are two main questions discussed by counsel:

(1) Did the proof offered support the decree entered?

(2) Is a bill in aid of execution the proper remedy?

1. Section 12864, 5 How. Stat. (2d Ed.) provides that in all suits begun by a bill in aid of execution the complainant shall make a *prima facie* case by introducing in evidence the judgment against the principal defendant, the execution, with the levy thereon indorsed, and proof of the conveyance complained of. The burden of proof shall then be upon the judgment debtor, or the person or persons claiming through or under him, to show that the transaction or transactions are in all respects *bona fide,* etc. No proof having been offered by the defendants, it cannot well be said that they had discharged any burden, if there was one resting upon them. The record shows that the plain-

tiff introduced in evidence the judgment as alleged in the bill of complaint, the execution and levy, and the record thereof, and the conveyance from the plaintiff to Charles A. Jacobs and Carrie Jacobs. There was also evidence, beyond what was required of the plaintiff, tending to show that the whole of the consideration paid for the property conveyed by the deed was paid by the defendant Carrie Jacobs. If a bill in aid of execution was the proper remedy, we think the plaintiff satisfied the statute by her evidence.

2. This brings us to the second question, as to whether a bill in aid of execution was the proper remedy. It is urged by defendants' counsel that, the deed complained of having been made by the plaintiff, she had no legal right to file a bill to have the deed set aside on the ground of fraud. It is also urged that the defendant Carrie Jacobs never had any title to the house and lot, and that the conveyance complained of was not made by her. There is much discussion in the briefs of counsel as to whether an attempt is made to set aside the conveyance, or to set aside that part of the conveyance which purports to vest any title in the defendant Charles A. Jacobs. The allegations of the bill are as follows:

"Your oratrix further shows and charges the fact to be that the said Carrie Jacobs caused the deed to said premises, made by your oratrix as aforesaid, to run to the said Charles A. Jacobs and Carrie Jacobs as husband and wife, for the purpose of making them tenants by the entirety, and placing the title to said premises so that said premises would not be subject to execution levy, and said title was so taken to hinder, delay, and defraud the creditors of said Carrie Jacobs, and for the purpose and with the intention of defrauding your oratrix out of her just dues and demands, and to prevent her realizing upon any judgment that your oratrix might secure against the said Carrie Jacobs by reason of the fraud practiced by the said Carrie Jacobs upon your oratrix as aforesaid."

We think the prayer of the bill, already referred to, sufficient to warrant relief in that regard. Really it is not claimed that the entire deed was void, but that that portion of it which gave any title to Charles A. Jacobs was fraudulent and void, and the plaintiff claims that the deed gave Carrie Jacobs a complete title to the premises.

We do not think there is much force in the claim that plaintiff cannot ask and obtain relief as to the deed in question, simply because it was executed by her. If the plaintiff were some other judgment creditor, the same objection would probably be made that the legal title had never been in the defendant Carrie Jacobs. It is urged by defendants' counsel that there was no evidence that the conveyance was made to the two defendants at the request of Carrie Jacobs; but we think that this may be fairly inferred from the circumstances of the case, as the matter inured to their benefit.

It will be noted that the defendant Carrie Jacobs acquired her first interest in the premises by virtue of the contract entered into between her and the plaintiff. The husband, Charles A. Jacobs, is nowhere mentioned in this contract. This was a good and valid contract of purchase of real estate, and gave such an interest to Carrie Jacobs as would be subject to levy on execution. Section 11321, 4 How. Stat. (2d Ed.), 3 Comp. Laws 1915, § 12897, provides, among other things, as follows:

"All the real estate of any debtor, including legal and equitable interests in lands acquired by the parties to contracts for the sale and purchase of lands, whether in possession, reversion or remainder, including lands fraudulently conveyed, with intent to defeat, delay or defraud his creditors, and the equities and rights of redemption hereinafter mentioned, shall be subject to the payment of his debts, liabilities and obligations, and may be levied upon and sold on execution as hereinafter provided."

A subsequent portion of the same section provides:

"That in case of a levy upon the equitable interest of a judgment debtor, the judgment creditor may, be-fore sale, institute proceedings in aid of &ast; &ast; &ast; execution, to ascertain and determine the rights and equities of said judgment debtor, in the premises so levied upon."

It is urged by plaintiff that it is not important that Carrie Jacobs did not have complete title to the prem-ises in question, or that she did not make the convey-ance; that she had an interest upon which she has at-tempted to create a charge, so that it could not be reached by her creditors. Section 11417, 4 How. Stat. (2d Ed.), 3 Comp. Laws 1915, § 11998, is as follows:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and any charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or de-fraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with a like intent, as against the persons so hindered, delayed or defrauded, shall be void."

It is the claim of plaintiff's counsel that her position is sustained by the following cases: *Foster* v. *Whelp-ley,* 123 Mich. 350 (82 N. W. 123); *Newlove* v. *Calla-ghan,* 86 Mich. 297 (48 N. W. 1096, 24 Am. St. Rep. 123); *Michigan Beef & Provision Co.* v. *Coll,* 116 Mich. 261 (74 N. W. 475); *St. Louis Hoop & Stave Co.* v. *Danforth,* 160 Mich. 226 (125 N. W. 5). In *Foster* v. *Whelpley, supra,* the judgment debtor, Whelpley, held a part-paid certificate to primary school lands. He assigned an undivided one-half interest in the premises to his wife and later the balance due was paid to the State and the patent issued to the judgment debtor

and his wife as tenants by the entireties. Execution was levied upon the lands in question, and a bill in aid of execution was filed to reach the undivided interest of the judgment debtor and subject it to sale. It was contended by the defendants that, as the judgment debtor had never had the legal title to the lands levied upon, the complainant had mistaken his remedy. Mr. Justice MOORE, in speaking for this court, said:

"It is an answer to the last claim to say that, under the express provisions of the statute and the decisions of this court, the undivided interest which Mr. Whelpley had in the land, prior to the issuance of the patent, could be reached by execution" citing section 1332, 1 Comp. Laws (1 Comp. Laws 1915, § 507); *Kercheval* v. *Wood*, 3 Mich. 509; *Allen* v. *Cadwell*, 55 Mich. 8 (20 N. W. 692).

We think the question is clearly decided in *St. Louis Hoop & Stave Co.* v. *Danforth, supra.* That was a combined creditors' bill and bill in aid of execution. The portion which we here refer to was in aid of execution. The fourteenth paragraph of the bill of complaint in that case was as follows:

"Your orator further shows that after the indebtedness upon which the said several judgments were rendered had accrued, to wit, on the 6th day of December, 1900, said Elmer M. Danforth purchased from Henry A. Macomb and William Stanton, executors of the last will and testament of Mary E. Macomb, deceased, and Stephen K. Stanton, William Stanton and Louise Stanton, his wife, Robert L. Stanton and Grace Stanton, his wife, and De Lagnel Berier the premises described in paragraph 7 herein for the consideration of $2,375; that with the purpose and intention of defrauding your orator and his other creditors, and for the purpose of hindering and delaying your orator in the collection of its just claims, and to prevent a levy and sale of said premises under and by virtue of said writs of *fieri facias*, the said Elmer M. Danforth procured and obtained a deed of said premises to be made and delivered to himself and his wife, Annettie Danforth,

defendant herein, and that the consideration therein mentioned, or at least one-half of said consideration, was paid by the said Elmer M. Danforth, and that the said Elmer M. Danforth is the owner of at least one-half of said premises."

Among the things prayed for in the bill was the following:

"That the said conveyance of the said described property, namely, lot 915, being a part of the Stanton farm, so-called 'private claim 473,' and being so numbered and described by and according to the recorded plat of a portion of said farm recorded in the register's office of the county of Wayne in liber 6 of plats, p. 26, to the said Elmer M. Danforth and Annettie Danforth, may be held and decreed subject to the said levies of your orator, and that the same, or the title and interest of the said Elmer M. Danforth therein, may be sold to satisfy said judgments, costs, and the interests thereof, and the costs of this suit."

The decree below in that case authorized the sale of the entire property. It was in this court modified, so as to provide for the sale of an undivided one-half of the property. It will be observed that in that case the title never had been in Elmer M. Danforth; that he had made a purchase of it, and then procured and obtained a deed of the premises to be made to himself and wife. We think the case almost parallel with the instant case in that respect. It shows that an execution had been levied thereon and was permitted to be sold to satisfy the judgment and costs.

Counsel for the defendants, in support of the proposition that a bill in aid of execution will not lie in this case, has cited the following cases: *Trask* v. *Green,* 9 Mich. 358; *Maynard* v. *Hoskins,* 9 Mich. 485; *Lee* v. *Enos,* 97 Mich. 276 (56 N. W. 550); *French* v. *Newberry,* 124 Mich. 147 (82 N. W. 840); *Bliss* v. *Tyler,* 159 Mich. 502 (124 N. W. 560). We have examined these cases in connection with the other authorities cited, and think that they are readily distinguished on

their facts from the instant case. We think that it cannot be seriously contended that a contract interest in lands is not subject to sale on execution under the statute which we have already referred to. *Welsh* v. *Richards*, 41 Mich. 593 (2 N. W. 920) ; *Grover* v. *Fox*, 36 Mich. 453, 459.

The learned circuit judge found that the house and lot in question was the sole property of the defendant Carrie Jacobs, in so far as the judgment in evidence was concerned, and that she was the real owner of said house and lot, and that the sheriff might proceed to sell the same upon said execution levy. That defendants did not see fit to introduce any evidence in the case was neither the fault of the plaintiff nor of the court.

We think this bill filed in the aid of execution was the proper remedy, and the decree of the circuit court is affirmed, with costs.

KUHN, C. J., and BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.