## SEWELL vs. HOLLAND.

1. Where a tenant in common bargains away the whole property, not as his own in severalty, but as the joint property of himself and his co-tenant, holding himself out as authorized to represent the latter in making the bargain, and the purchaser pays part or all of the price, and enters into possession, claiming under both tenants as his vendors, the co-tenant is not ousted if he gave his fellow no authority, written or verbal, to make the bargain, and if he did not afterwards ratify by receiving part of the proceeds, or otherwise. Any title, legal or equitable, which the purchaser thus acquires, will attach upon only the undivided interest of the tenant with whom he actually dealt, and when his title to that interest becomes complete, he will be a tenant in common with the other original co-tenant.   See 56 Ga., 659.   If, however, there was either authority or ratification, the result would be the same as if both tenants had in person taken part in the transaction, and the purchaser would be entitled to assert his purchase equally against both.

2. The actual possession of land is notice to all the world of whatever rights the occupant really has in the premises.   Those under whom he entered, or with whom he is in privity, cannot, pending his possession, clothe a vendee with any right, legal or equitable, which they themselves could not assert against him.   His possession warns everybody to inquire, if not into what he claims, at least into what he is entitled to claim rightfully.

3. A tenant in common having, by deed duly signed and sealed, and purporting to be made on a valuable consideration, conveyed his undivided interest in the premises, his vendee became a tenant in common in his stead.   The co-tenant cannot prevent partition at the instance of such vendee, on the ground that the consideration of

the deed was, in part, a corrupt agreement between the vendor and the vendee to compound a felony. The vendor not repudiating his conveyance for any latent vice in the consideration, (even if such would be his privilege) the co-tenant has no right to inquire into the consideration as a means of resisting the application for partition. Only when the principles of justice require it, will the consideration of a deed (the contract being executed, not executory) be scrutinized through extrinsic evidence. Code, §2690.

Partition. Tenants in common. Title. Prescription. Notice. Deeds. Consideration. Before Judge HILLYER. Fulton Superior Court. October Adjourned Term, 1877.

On November 19, 1873, Holland, claiming to be tenant in common with Sewell of 145 acres of land in Fulton county, filed his petition for partition. Sewell objected upon the ground that the applicant had no title, and that the sole title thereto was in him.

The petitioner showed a paper title to an undivided half interest in the land to himself. Constituting a part of his chain were three deeds, the first, from W. Euclid Young and wife to Eden Sprout, dated September 17, 1866; the second, (quit-claim,) from Sprout to petitioner, dated March 7, 1868; the third, (quit-claim,) from Young and wife to petitioner, dated April 8, 1872.

The evidence for the respondent presented the following facts: On February 3, 1866, he purchased from Willis, representing the former firm of Young & Willis, the land in controversy, taking, on the 9th of the same month, the following obligation:

"We agree to make, or cause to be made, a deed to the farm known as the J. L. Mayson farm, containing 142½ acres, being the same farm deeded by J L. Mayson to Geo. W. Center, and by the latter to Willis & Young, deed to be made to Isaac Sewell on payment of $1,000.00.
(Signed)						J. M. WILLIS,
						*per* J. WHITNEY."

The $1,000.00 was to be paid within ten days. Soon after the execution of the above instrument, respondent paid to Willis five bags of cotton, weighing 2,448 pounds, and on the 17th of the same month $105.00 in cash. The

cotton was to be sold in Atlanta or Augusta, and the proceeds applied to this debt., At the time Willis received the cotton, it was worth $36\frac{1}{2}$ cents per pound in Atlanta, where he should have sold it at once. Had its proceeds, with the amount paid by respondent, not made the $1,000.00, he would at once have made good any deficiency. Without the consent of respondent, the cotton was shipped to Cincinnati, and there sold, a year and a half afterwards, for 23 cents per pound. He purchased the entire interest of both Willis and Young in the land, and claims that with the cotton at $36\frac{1}{2}$ cents per pound, and the money, it was paid for in full within the ten days allowed. Immediately upon the purchase he went into possession of the land, claiming it as his own, and has so remained ever since.

As to the authority of Willis to bind Young in the sale, and the subsequent ratification of the latter if no original authority existed, the evidence was conflicting.

But one other point in the testimony requires notice: In 1863, during the late war, Young was going from Atlanta to Nassau, when petitioner placed in his hands, for deposit in a branch of the Bank of England at that point, 2,000 pennyweights of gold, and a considerable quantity of bank bills and Confederate money. Instead of making the deposit, Young carried the property to New York and appropriated it to his own use. Petitioner placed his claim in the hands of Eden Sprout, as his attorney, to collect it. He instituted legal proceedings in New York, and Young deeded a half interest in the land now in controversy to Sprout for the purpose of making a settlement with petitioner, and the latter accepted said land, together with another piece described in the deed, and $400.00, in full settlement of his demand. Petitioner had also instituted a prosecution for larceny after trust against Young in Fulton superior court. It was a part of the consideration for the deed above alluded to, that this prosecution should be dismissed.

The jury found for the petitioner. The respondent

moved for a new trial upon the following grounds, to-wit:

I. Because the court erred in charging the jury as follows:

(1.) "Adverse possession of land carries with it notice to all the world of the title, whether legal or equitable, under which the holder claims it. There are certain qualifications of this rule which I will explain to you:

(2.) "A possession originally not adverse does not become so unless notice, or knowledge of facts equivalent to notice, be brought home to the other party of the change of its character."

(3.) "A possession originally under a purchase and bond for titles, is not an adverse possession, but is subordinate to that of the owner or owners making the bond, and if it be claimed by such possessor that by the occurrence of subsequent events such possession has been made adverse, notice of the change of its character must be brought home to the party to be affected; that is, notice of the change of the character of the possession, or knowledge of facts equivalent to notice, such as would fairly put a reasonable man upon inquiry."

(4.) "Continuance of possession would be sufficient for the purpose to put a purchaser on notice of all that happened up to the time of his purchase, but this rule is qualified in cases of tenancy in common, as I shall presently explain to you."

(5.) "A sale of the entire interest in land held under tenancy in common, by one of the joint tenants, with bond for titles and placing the purchaser in possession, is not a disseizin, nor is the possession in such case notice of any adverse claim to the common owner."

(6.) "If land be held under a tenancy in common and a sale of the same be made, with bond for titles, under such form and with such attending facts as cause the jury to conclude that one owner is expressly bound and the other is bound only on the subsequent occurrence of some intervening equity dependent on the acts and conduct of the

parties themselves, a third person who became, *bona fide* and for a valuable consideration, a purchaser of the share of the common owner thus not originally bound and without notice of such intervening equity, or facts or conduct, would be protected notwithstanding the holder of the title bond was in possession, if placed in such position by the common owner, otherwise this principle would not apply."

(7.) "If the deeds to Sprout and Holland were made for the purpose of settling a criminal prosecution for larceny after a trust previously instituted by Holland against Young in this case, either in whole or in part, they would be void, and the plaintiff could not recover on them. But it is said that in 1872 Young and his wife made another deed to Holland, exclusively in consideration of an existing debt, and that the consideration of settling a criminal prosecution for a felony did not enter into this last deed at all. If you should find that a subsequent deed was made by Young and his wife to Holland, after the statute of limitation had barred the offense for which Young may have been previously prosecuted by Holland, then this second deed would be good, although the former deed may have been void."

II. Because the court erred in refusing to charge the jury as follows:

"If the sale to Sewell was authorized by Young and Willis, and he was immediately put into possession under that contract of sale, he did not hold as tenant in common with Young, and a writ of partition would not lie on behalf of a subsequent purchaser from Young." And in charging the same with the following qualification, to-wit: by inserting immediately after the eleventh word in said written request the following words, "and enough occurred to make it effective."

The motion was overruled and respondent excepted.

D. F. & W. R. HAMMOND; H. C. PEEPLES; E. P. HOW-ELL, for plaintiff in error, cited, on possession being notice,

26 *Ga.*, 132 ; 29 *Ib.*, 17, 121, 320 ; 48 *Ib.*, 585. Statute of frauds not in the way, 1 Story's Eq., §§761–763 ; 23 *Ga.*, 431 ; 15 *Ib.*, 445 ; 27 *Ib.*, 128 ; 28 *Ib.*, 165 ; 55 *Ib.*, 198 ; 57 *Ib.*, 473. Partition not proper remedy, Code, §§2303, 2304 ; 4 Kent, 370 ; 1 East, 568 ; 42 *Ga.*, 96, 118 ; 46 *Ib.*, 9 ; 47 *Ib.*, 674.

COLLIER & COLLIER ; P. L. MYNATT, for defendant, cited, 14 *Ga.*, 286 ; 54 *Ib.*, 611 ; 17 *Ib.*, 567 ; Code, §§2301–2303.

BLECKLEY, Justice.

1. There is no dispute that Willis and Young owned the land as tenants in common, that Willis bargained it in writing to Sewell, who paid at least a part of the purchase money, and went into possession, claiming the whole of it under this purchase ; that Willis did not attempt to sell his interest only, but attempted to sell to Sewell the interest of Young also, holding himself out as authorized by Young so to do ; and that Young's interest was afterwards formally conveyed to Holland. It is insisted that if Sewell had actual possession and claimed the whole land, especially if he had paid all the purchase money, Young was ousted, whether he had ever authorized the sale of his interest or not, or whether he ever ratified the sale or not ; and tha , though Sewell may not in fact have acquired Young's interest, yet, as he claimed to have acquired it, he did not become a tenant in common with him, and therefore the remedy by partition cannot be available to Holland, Young's vendee. But we think that, though Sewell may have believed that he owned the whole land, still, if he in fact owned no more than the interest of Willis, he would occupy to Young the relation which Willis previously occupied ; that is, the two would be tenants in common. Of course, Young's subsequent vendee would take Young's place in that relation ; and so, if Young neither authorized nor ratified the sale by Willis to Sewell, Holland and Sewell became tenants in common. See 26 *Ga.*, 515 ; 52 *Ib.*, 637 ; 56 *Ib.*, 659.

2. If Young either authorized or ratified the sale by Willis, he could not afterwards and whilst Sewell was in possession, claiming the whole land, convey a better title to Holland or to Holland's attorney than he himself then had. Sewell's possession would so protect him that Young could convey no title to another which he himself could not assert against Sewell, possession being notice to all the world, if not of what the possessor actually claims, at least of what he is entitled to claim rightfully. Holland can stand in Young's shoes, but not in a new and better pair. This is so, whether Sewell has paid all the purchase money or not. Holland can have partition, if Young could have it were the conveyances under which Holland now claims through Young out of the question ; otherwise, he cannot have it. Sewell's possession prevented Young from placing Holland any higher than the exact position in which Young stood.

3. It matters not that Holland may have acquired title in whole or in part by compounding a felony. Sewell is not interested in that question. No such consideration appears on the face of either of the deeds. The deeds are executed contracts, and Young, the maker, is not complaining of them. Sewell has no right to volunteer a complaint for him. Indeed, it is not apparent how even Young could avoid them were he so disposed. It is enough for all Sewell's rights, legal or equitable, that he is allowed to stand in this contest just as if he were resisting Young.

What we have ruled will be found to comprehend the whole substance of the case, except the matters of fact which are for the jury.

Judgment reversed.