VALENTINE LIPP, APPELLEE, v. SOUTH OMAHA LAND SYNDICATE ET AL., APPELLANTS.

1. **Real Estate:** CONTRACT TO SELL: ASSIGNMENT: MORTGAGE. A land contract which is assigned by a written assignment, absolute in form, but designed as a mere security for a debt, is but a mortgage, and when the debt is paid the lien of the assignee will cease, except in case of an assignment by said assignee to another party, who receives the same in good faith and without notice.

2. ———: ———: ———: ASSIGNEE: SETTLEMENT. The pur-

chaser of a lot, who received a contract therefor, assigned the same as security for a debt, and to secure future advances, the purchaser remaining in possession, but the assignment being absolute in form. The assignees effected insurance on a building on the lot in their own names, and the building being destroyed by fire collected the insurance, which satisfied their claims. The purchaser thereupon brought an action against the assignee to have the assignment declared a security and for an account. While this action was pending, the purchaser, being in possession, sold and conveyed the lot to one L., who entered into possession thereof. The purchaser and assignee thereupon settled the suit pending between them, and stipulated that the same should be dismissed. *Held*, That the purchaser having parted with all his interest in said lot, he could not thereafter fraudulently release any interest of L. therein.

3. ———: TITLE. A party who purchases real estate in the possession of another takes the title incumbered with the equitable rights and equities of the party in possession.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

*J. P. Breen* and *E. R. Duffie,* for appellants, cited: 1 Greenleaf Evidence (13th Ed.), Secs. 27, 205. *Hoyt v. Gelston,* 13 Johns., 141. *McCann v. McLennan,* 3 Neb., 25. Comp. Stat., Sec. 7, Chap. 7. *Inloe v. Harvey,* 11 Md., 519. *Snowman v. Harford,* 62 Me., 434. Wade on Notice, Sec. 338. *Bank v. Hopkins,* 2 Dana, 395. Freeman Judgments, Sec. 262. *Davis v. Davis,* 26 Cal., 38. *Holland v. Griffith,* 13 Neb., 474.

*B. G. Burbank, John W. Lytle,* and *John L. Webster,* for appellee, cited: *Williamson v. Culpepper,* 16 Ala., 211. *Eiland v. Radford,* 7 Ala., 726. *Hall v. Savill,* 3 G. Green., 37. *Belton v. Avery,* 2 Root, 279. *Uhl v. May,* 5 Neb., 160. *Jones v. Harvester Co.,* 8 Id., 451. *Whitehorn v. Cranz,* 20 Id., 398. *Lamont v. Cheshire,* 65 N. Y., 42. *Everts v. Agnes,* 4 Wis., 354. *Grimstone v. Carter,* 3 Paige Ch., 436.

MAXWELL, J.

This action was brought by the plaintiff against the defendants to obtain a deed to certain real estate, which he claims to have purchased, paid for, and to be in possession of. He alleges in his petition: "That on the 12th day of April, 1884, the said South Omaha Land Syndicate, defendant, was then and still is a corporation duly organized and existing under the general incorporation laws of the state of Nebraska, and having one of its principal places of business in Douglas county; that on said date the said land syndicate, in consideration of the sum of $225, executed to said defendant, William E. Jones, a contract of sale of certain real estate, known as lot 11 in block 77, in South Omaha, in said county of Douglas, the said Jones paying therefor the sum of $56.25 cash, and a like amount on each 12th day of May, 1885, 1886, and 1887, was to be paid by said Jones, with interest and taxes for 1884. And after said payments had been made the said Jones or his assigns were to receive from said syndicate a deed conveying to him or them the aforesaid lot in fee simple, with the ordinary covenants of warranty; that said Jones took possession of said property and erected a building thereon of the value of $4,000, or thereabouts, and that said land syndicate has since that time been paid in full for said property.

"2.    That on the 22d day of May, 1884, said contract of sale was, with the consent of said land syndicate, assigned to J. B. French & Co., of Omaha, Nebraska, and defendants herein, absolute on its face, but conditioned nevertheless to secure a debt which said Jones owed said J. B. French & Co., amounting to about $2,700.

"3.    That prior to said assignment the late James B. French, who was a partner of the firm of J. B. French & Co., deceased, and letters of administration of his estate were

taken out by the defendant, Egbert E. French, and the said Egbert E. French took possession of said premises and insured the building thereon for the sum of $3,800, and on the 29th day of November, 1885, the said building was destroyed by fire.

"4. That the said Egbert E. French, while acting for the said J. B. French & Co., collected said insurance money in an amount larger than the indebtedness of said Jones to said J. B. French & Co., and said J. B. French & Co. held said assignment wholly without consideration, and the said Jones was then fully entitled to have said contract so assigned as aforesaid surrendered to him, or this plaintiff, as his assignee, as it will hereafter appear.

" 5. That on the 21st day of May, 1886, and while the said Jones was in full possession of said lot, and the owner thereof, for and in consideration of the sum of $1,000, he sold said property to this plaintiff, and at the same time executed a contract in writing to said plaintiff, that he would make said plaintiff a deed to him of said lot as soon as the amount of certain liens against said property were ascertained, which were then in litigation, and as soon as he could obtain the said contract of original purchase from said J. B. French & Co., and said plaintiff took possession of said property, and has ever since then and does now have possession thereof, and has placed improvements thereon of the value of $3,000, and paid said Jones in full the said sum of $1,000, and said land syndicate has been paid in full.

" 6. The said plaintiff says that at the time of the making of the said contract of sale by Jones to this plaintiff the said original contract made by the land syndicate to Jones was not in the possession of said Jones, but was in the hands of E. E. French, and in litigation in a suit of *W. E. Jones v. E. E. French et al.*, in this court, and said assignment could not be endorsed upon the same, but said syndicate was a party to said litigation, and knew of said

assignment of Jones to French, and had actual notice of Jones' assignment to said plaintiff, and consented thereto, and knew of plaintiff's occupancy and possession of said premises.

"7.   The said defendant, E. E. French, though having no interest therein, and through the connivance of said Jones, sold or pretended to sell said original contract and said property to the defendant, Davis; that said Davis took said assignment with full knowledge of the plaintiff's contract of purchase of said Jones, notwithstanding he pretended to purchase and did surrender said original contract to said land syndicate, and received a deed therefor; that said Marc. A. Upton had actual notice of the sale of said property by Jones to this plaintiff, and, notwithstanding such notice, pretended to purchase said property of said Davis, who executed to him a deed to said premises, and said Marc. A. Upton now holds the bare, naked legal title to said lot, and the plaintiff alleges that all of said sales were fraudulent, and without consideration, and taken with actual notice of the plaintiff's ownership and possession of said property, and the plaintiff says that the said Jones now refuses to make him a deed to said property as he contracted to do, although he has been paid in full therefor, and has left the country for parts unknown."

Answers were filed by certain defendants, who claim to have purchased the premises from or through J. B. French & Co., and to be entitled to a decree in their favor.   On the trial of the cause the court found the issues in favor of the plaintiff, and rendered a decree in his favor.

The testimony shows that Jones purchased the lot in question in April, 1884, for the sum of $225, and paid thereon the sum of $56.25, the remainder to be paid in three annual payments; that Jones received a contract which contained the terms and conditions of the purchase, and provided that upon full payment being made a deed

should be issued.    Jones erected a building of considerable value on the lot in question; and being indebted to J. B. French & Co., in about the sum of $600, he assigned the contract to J. B. French & Co. by a written assignment, absolute in form.    The indebtedness of Jones to French & Co. continued to increase until the spring of 1885, when it amounted to about $2,700.    In the meantime Jones had caused certain policies of insurance to be issued upon the building, which were assigned to French & Co. French & Co. also obtained insurance.    In the spring of 1885, Jones left South Omaha, and his whereabouts seems to have been unknown for some time thereafter.    French & Co. thereupon took possession of the building, rented it, collected the rents, and effected insurance thereon in their own favor for about the sum of $3,800.    About the first of September, 1885, Jones returned to South Omaha and regained possession of the property.    On the 29th of that month the building was destroyed by fire, and the insurance collected by French & Co.    About that time, Jones filed a petition in equity against French & Co., in which he alleged that the assignment of the contract to French & Co. was not absolute, but made as security for certain debts, and praying that an account might be taken and said assignment declared to be merely a security for the payment of the amounts due from Jones to French & Co.    Soon after the destruction of the building as above stated, Jones erected a second building on said lot, and retained possession of the same until the 21st of May, 1886, when he sold the premises to the plaintiff for $1,000. The plaintiff thereupon took possession, and has remained in the possession from that time until the present.    In March, 1887, Jones and French & Co. entered into a stipulation, in which they say they had settled the action heretofore referred to between them, and that the cause should be dismissed, and in April, 1887, judgment of dismissal was entered.    On the 11th of March, 1887, French &

Co. assigned the contract issued to Jones and assigned by him to them to one Edward C. Davis. Davis obtained a deed from the land syndicate about the 15th of March, 1887, and thereafter conveyed said lot to Marc A. Upton, who conveyed an undivided half to the defendant, Levi, the plaintiff being in possession of said lot at the time of the execution of all these conveyances.

The first question presented is, as to the nature of the assignment of the contract by Jones to French & Co. Without reviewing the evidence at length, it clearly shows that French & Co. took the assignment as security for debts then owing, and advances thereafter to be made. The testimony also shows that the amount of insurance received by French & Co., and the rent of the premises during Jones' absence in the summer of 1885, were sufficient to cancel all of Jones' indebtedness to them, and that at the time that French & Co. assigned to Davis their debt had been fully paid and the lien discharged, and that French & Co. could not convey any interest or title in said lot except to a *bona fide* purchaser without notice.

2d.    But it is insisted that the stipulation entered into by French & Co. with Jones, agreeing that the action brought by Jones against French & Co. for an accounting, and to have the assignment declared a mere security, should be dismissed, and the judgment dismissing said action bars the plaintiff's rights in the premises. In other words, that the action having been instituted by Jones in order to assert his rights against French & Co., that a settlement of his claims and dismissal of the action deprives the plaintiff of all rights under the contract, and prevents a court of equity from granting him any relief. We do not think so. At the time of the dismissal of this action, Jones had no interest in the lot in question, as nearly a year before he had sold and conveyed all his interest to the plaintiff, who was then in possession. Jones, therefore, occupied toward the plaintiff the relation of an

assignor who gives a release after his assignment. Such release is fraudulent on the part of the assignor, and will not avail the adverse party if accepted after notice of the assignment. *Phillips v. Claggett,* 11 M. & W., 84. *Reservoir Co. v. Chase,* 14 Conn., 123. *Bartlett v. Pearson,* 29 Me., 9. *Webb v. Steele,* 13 N. H., 230. *Blake v. Buchanan,* 22 Vt., 548. The plaintiff's residence on the lot in question was notice to all parties that he had an interest therein, and it was their duty to inquire as to the extent of such interest. The code of civil procedure authorizes the bringing of an action at law by an assignee in his own name, but at common law this is not permitted —the action being required to be brought by the assignee in the name of one of the contracting parties. This, however, did not give the assignor the right to dismiss the action. The plaintiff in a suit, who has conveyed his interest in the subject of the action to another, thereby ceases to be the real party in interest, and although the action may proceed to judgment in his name, yet he cannot fraudulently dismiss the suit by collusion with the adverse party so as to deprive his assignee of his just rights in the premises.

3d. The continued possession of the plaintiff was notice to all the world of his rights in the premises. As was said in *Whitehorn v. Cranz,* 20 Neb., 398 : " A purchaser of real estate with notice of a prior contract to convey the same to a third party, takes the estate incumbered with the equitable right of the original contractor to a completion of his bargain. *Champion v. Brown,* 6 John. Ch., 402, 403. *Boyd v. Vanderkemp,* 1 Barb. Ch., 273. *Atcherly v. Vernon,* 10 Mod., 518. *Winged v. Lefebury,* 2 Eq. Cas. Ab., 32. *Taylor v. Stibbert,* 2 Ves. Jun., 437. *Daniels v. Davidson,* 16 Id., 249. A purchaser with notice is liable to the same equity, and is bound to do that which the person he represents would have been required to do for the conveyance."

Persons purchasing from French & Co. were bound to inquire as to the extent of the plaintiff's interest, and could not by closing their eyes to his possession put themselves in the position of *bona fide* purchasers without notice. The judgment of the district court is clearly right, and is in all things affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.