WALTER TATE, APPELLANT, vs. PENSACOLA, GULF, LAND AND DEVELOPMENT COMPANY, A CORPORATION, ET AL., APPELLEES.

1. Where a contract contains no provision to that effect, time is not regarded as of its essence in a court of equity.

2. While a court of equity does not regard time as of the essence of a contract unless it is so expressly stipulated; yet it will require of one who seeks the specific performance of a contract that he shall not be guilty of unreasonable delay.

3. Where the vendee is in possession of the premises by the permission of the vendor after payment of a part of the purchase money, and under an assertion and exercise of right, the mere lapse of time does not bar his remedy for a specific performance of the contract to convey such premises.

4. If the vendee takes and retains possession of the premises with the vendor's consent, his mere delay in bringing the suit or paying the purchase price, will not prevent him from compelling a conveyance upon a subsequent payment or tender of

the amount due, nor will his right to such relief be cut off until the vendor places a limit to the lapse of time by a demand of payment at or before a specified day, and by a notice that the agreement will be rescinded unless the demand is complied with and the vendee makes default thereon.

5. In suits for specific performance of a contract the defendant, in order to avail himself of the plaintiff's delay as a defense, must have performed or been ready and willing to perform all the terms of the contract on his own part.

6. All persons who, subsequent to a contract of sale, derive from or through the vendor any interest in the land which is the subject-matter of such contract, with notice thereof, are bound to perform the same to the same extent that the original vendor would be bound if he had still retained the title in himself.

7. Where a person other than the grantor is in possession of land it is the purchaser's duty to inquire into the title, and the presumption of law is that upon such injuiry he learns the true state of the title.

8. Actual possession of land is notice to all the world of whatever rights the occupant really has in the premises, and a vendor can not convey to any other person without such person being affected with such notice. Actual knowledge of such possession on the part of those sought to be charged with such notice is not necessary. Notice in such cases is a legal deduction from the fact of possession.

9. Possession, in order to be constructive notice of a claim of title must be open, visible and exclusive, and is shown by any use of the land that indicates an intention to appropriate it for the benefit of the possessor. Such use may be any to which the land is adapted, and is calculated to apprise the world that the property is occupied.

10. Where it is sought to prove an increase in the value of the land concerning which a suit for specific performance is brought, the testimony is too remote and uncertain which only shows the value of the property seven or eight years before the making of the contract sued upon, and compares it with the value at the time the testimony was given, about eight months after suit was brought. Such testimony should be limited to a time at or near the making of the contract, and the value at such time compared with its value at or near the time suit was brought.

Tate v. Pen., Gulf, Land & Develop. Co. et al.—Statement of Case.

11. It is an established rule of chancery practice, and of pleading and practice generally, that the *allegata* and *probata* must correspond. However full and convincing may be the proof as to any essential fact, unless the fact is averred, proof alone is insufficient. All the evidence offered in a case should correspond with the allegations and be confined to the issues.

12. A vendee of real estate who purchases with notice of the equities of an occupying tenant can not defeat the performance of the contract of a former grantor because of the intervention of the title of a married woman between him and such grantor, where such married woman has conveyed all her interest in the property and is only a nominal party to the proceedings.

Appeal from the Circuit Court for Escambia county.

STATEMENT.

The appellant, complainant below, brought his bill of complaint in the Circuit Court against appellees. The bill sought to enforce specific performance of a written agreement for the sale of a tract of fifteen acres of land therein described, to enjoin a pending action of ejectment for said land brought by the appellee, the Pensacola, Gulf, Land and Development Company against the complainant.

From such of the pleadings and testimony in the case as appears necessary to be stated it appears that the land in controversy, before and for some time after the month of April, 1883, was owned by one C. Dowd, who was made a party defendant. About said date said Dowd made a written agreement to sell said land to one George Stallsworth, also made a defendant. That said Dowd and Stallsworth then executed a memorandum of agreement for a sale of a portion of the land with one E. C. Bonifay, who paid $20 upon the purchase money under the same and immediately entered into possession of the property, and had the

same laid off by a surveyor, and the boundaries thereof indicated by marks upon the trees and otherwise. This tract of land is the property in dispute.

On May 19th, 1884, the said Bonifay made a written assignment to R. B. S. Hargis and R. W. Hargis of all his interest in said lands, and all his rights under said contract. After this assignment the Hargises entered into possession of said land and erected a building to be used for a hospital, and made other improvements thereon. Afterwards, on February 19th, 1888, R. B. S. Hargis assigned his interest to R. W. Hargis, who, on February 23d, 1888, conveyed the same by deed to Walter Tate, the complainant. C. Dowd, had, in the meantime, on February 17th, 1888, conveyed the said land by deed to R. W. Hargis. All of these instruments recite a valuable consideration. The said Dowd previous to his deed to R. W. Hargis had on October 25th, 1886, conveyed all of his interest in said land to Emma I. Petterson, wife and co-defendant to J. C. Petterson. The said Petterson and wife of September 6th, 1887, conveyed the said land to the defendant, the Pensacola, Gulf, Land and Development Company. The defendant J. C. Petterson was the president of said corporation at the time of such conveyance. Much testimony, containing some conflict, was offered upon the subject of the knowledge of J. C. Petterson of the equities of the complainant or those through whom he derived title. No evidence was offered upon the subject of notice to the defendant corporation, except that of the knowledge of the defendant Petterson, its president, of the facts constituting the equities of the complainant's case, and of such constructive notice as arose from the actual occupancy and possession of the property by those

JANUARY TERM, 1896. 443

Tate v. Pen., Gulf, Land & Develop. Co. et al.—Statement of Case.

through whom the complainant derived his interest. In the purchase of the land by Emma I. Petterson from Dowd, and also in the sale of the same to the Pensacola, Gulf, Land and Development Company, the defendant J. C. Petterson transacted the business in behalf of his said wife, and joined with her in the deed made pursuant to the latter's sale. The answer of the defendant corporation emphatically denied any knowledge or notice of the equitable claims of those from whom complainant derived title, as stated in the bill of complaint. Besides others named, E. C. Bonifay, R. B. S. Hargis and R. W. Hargis were made parties defendant. Decree *pro confesso* was entered against all the defendants for want of answer, except Emma I. Petterson, J. C. Petterson, and the Pensacola, Gulf, Land and Development Company.

The complainant, with his amended bill, tendered to the defendant, the Pensacola, Gulf, Land and Development Company the balance of the purchase money, and paid the same into the registry of the court.

At the final hearing the court dismissed the bill of complaint, from which the complainant appealed. The only error alleged is the final decree dismissing the bill of complaint.

The other facts are stated in the opinion of the court.

*Blount & Blount*, for Appellant.

*John Eagan*, for Appellees.

LIDDON, J.:

Several grounds were alleged and sought to be proven by the appellee, the Pensacola, Gulf, Land and Development Company, as sufficient to bar the relief sought by the complainant. Such of these grounds as it seems needful to notice may be briefly summarized as follows: (1) laches of complainant and those through whom he claimed in performing the contract, and in seeking performance by the defendant; (2) that the Pensacola, Gulf, Land and Development Company is an innocent purchaser for value without notice of complainant's equities; (3) that said defendant derived title through a married woman, and that specific performance could not be had against her, nor against her grantees.

The question of the possession of the complainant and of the Hargises and Bonifay, through whom he claimed, is one of primary importance in the disposition of this case. Whether or not they were in possession of the premises in controversy, and the nature and extent of such possession, are issues that materially affect other questions in the case, and must be first determined. We will not attempt any statement or summary of the evidence upon this subject. It is not entirely free from conflict and contradiction. We state only the conclusion reached by us as to the facts established by the weight and preponderance of the testimony, or the admissions contained in the pleadings. The testimony shows that E. C. Bonifay, at the time of his contract of purchase, paid a part of the purchase money, and with the full knowledge and consent of Dowd and Stallsworth, a very short time after moved upon the premises in question, and lived

in a house which was situated thereon until the house was destroyed by fire a short time before he assigned his rights under the contract and his interest in the land to the Hargises, a period of one year or thereabout. Three or four months after he (Bonifay) entered into possession he had a surveyor to make a survey of the lot so bought by him, and to indicate the boundaries thereof, except where there were water or shore line boundaries, by setting up posts or stobs, and by blazes and marks upon the trees standing near such boundaries. These boundaries were also plainly indicated by an open space estimated at one and a half to four feet wide, from which the undergrowth and shrubbery had been cut and removed. The evidence does not show that this open space was made for the express purpose of indicating a boundary, but that the smaller growth was cut and removed for the convenience of the surveyor in the use of his instruments and for running the line. One of these openings in the undergrowth was afterwards used as a path, and the other remained plainly and distinctly visible at the time the complainant acquired his interest in the property. Bonifay made some small improvements and enclosed about a half acre of the land for a garden; he used the land within the limits marked by the surveyor for firewood, and took care of it and kept trespassers from intruding upon it. R. B. S. Hargis and R. W. Hargis after this entered into possession, built thereupon a large frame building for a private hospital; also built a stable, other outhouses and a wharf and fences. The hospital building cost between $1,400 and $1,500. The building was actually used as a hospital, and it and the whole fifteen acres of land, included in the surveyed boundaries, was kept in

charge of an employe of the Hargises. This employe was instructed to protect the property from trespassers, and to cut the growth thereon for firewood for use of the hospital and inmates, but not to cut wood beyond the surveyed boundaries. Wood was so cut and used during the entire time of the occupancy of the property by the Hargises, a period of more than three years. The proof shows that the possession of Bonifay, as well as that of the Hargises, was taken and held under a claim of ownership, of right and title to the premises. The greater part of the land not covered by the buildings and improvements was covered by pine saplings, small trees and undergrowth—the merchantable timber having previously been cut and removed. We think the evidence fully demonstrates the knowledge of this possession by the defendant J. C. Petterson. The complainant entered into possession a short time after obtaining his deed.

Having stated our conclusions as to the possession of complainant and his predecessors, we will proceed to consider the objections above stated urged by the defendant in bar of the relief sought by the complainant. The first objection which the defendant Pensacola, Gulf, Land and Development Company claims precludes the granting of the relief sought is, that of delay in performing his contract and seeking his remedy. Upon this point it is contended that time was of the essence of the contract. Without setting forth the contract in full, it is sufficient to say that it contains no provision to that effect, and, therefore, time was not of its essence, and can not be so regarded in a court of equity. Chabot vs. Winter Park Co., 34 Fla. 258, 15 South. Rep. 756; Southern Life Insurance and Trust Co. vs. Cole, 4 Fla. 359. It is also undoubt-

JANUARY TERM, 1896.    447

Tate v. Pen., Gulf, Land & Develop. Co. et al.—Opinion of Court.

edly a correct proposition that "while a court of equity does not regard time as of the essence of a contract, unless it is so expressly stipulated, yet it will require of one who seeks specific performance of a contract that he shall not be guilty of unreasonable delay." Chabot vs. Winter Park Co., *supra*.

In this case we have found from the evidence that the predecessors of the complainant, and to whose equities he succeeded, were in the possession of the premises, with permission of the vendor and after payment of a part of the purchase money, under an assertion and exercise of right. In such a case the lapse of time does not bar the remedy. Upon this subject it is said by an eminent author: "In determining what amount of mere delay in bringing his suit will defeat the plaintiff's claim to a specific performance; or, in other words, what lapse of time, after his right of action accrued, will render the demand stale —the rule prevails in equity as in law, that while the plaintiff is in possession under an assertion and exercise of right, the lapse of time does not prejudice his remedial right. If the vendee, therefore, takes and retains possession of the premises with the vendor's consent, his mere delay in bringing a suit, or even in paying the price, will not prevent him from compelling a conveyance upon a subsequent payment or tender of the amount due nor will his right to the relief be cut off until the vendor places a limit to the lapse of time by a demand of payment at or before a specified day, and by a notice that the agreement will be rescinded unless the demand is complied with, and the vendee's default thereon. The defendant, in order to avail himself of the plaintiff's delay as a defense, must have performed, or been ready and willing to

perform, all the terms of the contract on his own part.
Where the contract is substantially executed, the pur-
chaser has obtained possession, and of course is vested
with an equitable title, but the legal title is yet held
by the vendor, the vendee's delay in bringing a suit to
compel a conveyance, however long continued, will
not defeat his remedy of a specific performance, un-
less perhaps the situation of the vendor and his rela-
tions to the land have been so altered in the meantime
that a specific execution of the agreement will be in-
equitable." Pomeroy on Contracts, sec. 404.

In this case the vendor or his grantees had never
made any demand for payment on or before a speci-
fied day, and had never given any notice that the agree-
ment would be rescinded unless the demand was com-
plied with. Not only had the complainant's prede-
cessors been in possession, but they had made valu-
able improvements upon the land. In such a case
where the delay lasted for thirty years, the court said:
"Where the purchaser, under an executory contract,
enters on, improves, and continues in the possession
of the land, the lapse of time is no defense to his bill
for specific execution." Barbour vs. Whitlock, 4 Mon.
180. A similar case, where the delay was not so great,
and where the point was likewise decided, is Mason vs.
Wallace, 4 McLean, 77. Other cases holding similar
views of the law are Waters vs. Travis, 9 Johns. 450,
text 466; New Barbadoes Toll Bridge Co. vs. Vree-
land, 4 N. J. Eq. 157; Miller vs. Bear, 3 Paige, 466;
Bruce vs. Tilson, 25 N. Y. 194; Crofton vs. Ormsby, 2
Sch. & Lef. 583, text 603; Stretch vs. Schenck, 23 Ind.
77. Applying these principles of law to the facts of
the case, the conclusion necessarily follows that the

complainant was not barred of relief by reason of his delay in seeking it.

.There is another reason why the defendant can not avail itself of complainant's delay in the matter. As we have seen, time was not made of the essence of the contract. While the general rule obtains that a court of equity will specifically enforce a contract for the sale of lands only in cases where the complainant shows himself prompt and eager to perform the contract on his part (Chabot vs. Winter Park Co., *supra*), yet under the facts of this case the defendant is not in a situation to avail itself of the defense of a want of promptness upon the part of the complainant. The defendant does not claim that it was at all times ready and willing to perform the contract on his part. It claims to have known nothing about the contract whatever, it never offered to perform the same or expressed any willingness so to do, or took any steps whatever for that purpose, but, on the contrary, claimed the land absolutely discharged from any equitable title of complainant, and made its defense to the case chiefly upon that ground. "The defendant, in order to avail himself of the plaintiff's delay as a defense, must have performed, or been ready and willing to perform, all the terms of the contract on his own part." Pomeroy on Contracts, sec. 404 and note 2. Leaird vs. Smith, 44 N. Y. 618; VanCampen vs. Knight, 63 Barb. 205; 3 Pomeroy's Eq. Jur., sec. 1408, and authorities cited in note 1.

We next examine the question whether the defendant, the Pensacola, Gulf, Land and Development Company, is an innocent purchaser for value without notice of the complainant's equities. The evidence, we

29

think, clearly shows a knowledge and notice of these equities of the part of the defendant J. C. Petterson. J. C. Petterson was at the time of the conveyance by Emma I. Petterson to the Pensacola, Gulf, Land and Development Company, the president of that corporation. He joined with his wife in the deed, and acted in the transaction in her and his own behalf.

It is admitted on both sides that the land involved once belonged to one ·C. Dowd. It is also admitted, and we think properly, that all persons deriving any interest in the land from or through said Dowd after his contract to sell to Bonifay, and with notice of such contract, are bourd to perform the same to the same extent that Dowd would be bound, if he had still retained the legal title in himself. McRae vs. McMinn, 17 Fla. 876; Ward vs. Spivey, 18 Fla. 847; Pomeroy on Contracts; sec. 493; 2 Pomeroy's Equity Jurisprudence, sec. 688, and authorities cited in note 4. The question, then, is material whether the defendant corporation, the Pensacola, Gulf, Land and Development Company, when it purchased the land from Mrs. Petterson, had notice of the contract of sale through which arose the equity of the complainant. The complainant claims that the corporation had notice, because the defendant J. C. Petterson had such notice while he was president of defendant. As, in our opinion, there was sufficient notice of complainant's rights by reason of the actual occupation of the premises by himself and his predecessors in possession, it is useless to determine the effect upon the corporation of the knowledge and notice by J. C. Petterson, its president, of such rights and equities. Whether the corporation was or was not bound by such notice to Petterson the result in this case would be the same.

It is claimed by the complainant that the actual possession and occupancy of the premises by his predecessors is of itself sufficient to charge the defendant with notice of his equitable title.   The Pensacola, Gulf, Land and Development Company admits in its answer a knowledge that the occupation and use of the hospital, and grounds enclosed about the same, was held by the Hargises, but was informed and understood that such holding was by consent of Emma I. Petterson and subject to her title.   It denies all knowledge or notice of the possession or occupation of the remaining portion of the tract involved in the litigation.   The case of McRae vs. McMinn, 17 Fla. 876, was in some of its features like the present.   There the vendee knew that another was in possession of the land, but believed she was in possession as a tenant, holding under another.   This knowledge, coupled with the fact that the instrument which purported to pass title to his grantor, but which was ineffectual to pass such title, was of record, and contained a description of the topography of the land, was held to be sufficient to lead the vendee to inquiry by which he might have learned the nature of the title and claim of the party in possession, and that a court of equity would deem him connusant of it.

In this case the rule was laid down that a subsequent purchaser, although without actual notice, will be considered a purchaser of the seller's title subject to the equities of the tenant.   It may be conceded that the facts of the case hardly required so broad an enunciation of the rule, as there was some actual notice of the possession.   Therefore the court said:   "The authorities go beyond the case at bar.   We think the general rule is, that where a person, other than the grantor, is

in possession, it is the purchaser's duty to enquire into the title; and the presumption of law is that upon such enquiry he ascertains the true state of the title.'' The broad general rule has often been proclaimed by the courts that ''the actual possession of land is notice to all the world of whatever rights the occupant really has in the premises, and a vendor can not convey to any other person without such person being effected with such notice.'' Finch vs. Beal, 68 Ga. 594; Sewell vs. Holland, 61 Ga. 608. In such cases open, visible, actual possession is of itself notice of the rights of those in possession. Actual knowledge of such possession on the part of those sought to be charged with such notice is not necessary. Notice in such cases is a legal deduction from the fact of possession. Allen vs. Cadwell, 55 Mich. 8, 20 N. W. Rep. 692; Woodward vs. Clark, 15 Mich. 104; Hamilton vs. Fowlkes, 16 Ark. 340, and many authorities cited in text; Buck vs. Holloway, 2 J. J. Marsh, 163; School District vs. Taylor, 19 Kansas, 287; Lipp vs. Hunt, 25 Neb. 91, 41 N. W. Rep. 143; Moss vs. Atkinson, 44 Cal. 3; McConnel vs. Reed, 4 Seam, 117, S. C. 38 Am. Dec. 124; Killey vs. Wilson, 33 Cal. 690; Lipp vs. South Omaha Land Syndicate, 24 Neb. 692, 40 N. W. Rep. 129; Bank of Orleans vs. Flagg, 3 Barb. Chy. 316; Dixon & Starkey vs. Doe *ex dem.* Lacoste, 9 Miss. (1 S. & M.) 70; Strickland vs. Kirk, 51 Miss. 795; Perkins, Livingston & Post vs. Swank, 43 Miss. 349; Doolittle vs. Cook, 75 Ill. 354; Metropolitan Bank vs. Godfrey, 23 Ill. 579; Noyes vs. Hall, 97 U. S. 34.

Under our recording acts possession has been held to be such constructive notice of ownership as to dispense with the necessity of recording the deed. Massey vs. Hubbard, 18 Fla. 688.

Some objection of appellee is made that the posses-
sion of those through whom complainant derived his
equitable title, was not such open, visible possession,
such as is necessary to give constructive notice of the
title of the tenant.   There can be no question of this
kind as to that portion of the property covered by the
hospital, garden and appurtenances.   As to these it is
admitted that the possession was notoriously open and
visible, and came within the actual knowledge of the
defendant.   As to other portions of the tract, it seems
that the larger trees suitable for timber had been re-
moved.   Those remaining were small, and appear to
have been useful only for firewood.   Such use was
made of them, and the property was protected from
tresspassers.   The limit of the possession claimed was
plainly marked, and all the use seems to have been
made of the land of which it was capable.   Possession,
in order to be constructive notice of a claim of title,
must be open, visible and exclusive, and is shown by
any use of the land that indicates an intention to ap-
propriate it for the benefit of the possessor.   Such use
may be any to which the land is adapted, and is cal-
culated to apprise the world that the property is occu-
pied.   Truesdale vs. Ford, 37 Ill. 210; Wickes vs.
Lake, 25 Wis. 71.   The character of possession proven
in this case, if adverse and continued for the statutory
period, would give a prescriptive title to the premises
under our statute of limitations, as it was based upon
a written instrument as being a conveyance of the
premises in question.   Rev. Stat., par. 2 of sec. 1290.
We think the actual knowledge of the defendant, the
Pensacola, Gulf, Land and Development Company, as
to a possession of a portion of the premises was suffi-
cient notice to it of that portion, and that the actual

open, visible possession of the remaining portion was sufficient notice as to the remainder, and that the said defendant was not a purchaser without notice of any portion of said land.

The defendant corporation claims that the relief prayed for by the complainant should have been denied because the property had advanced in value. No defense of this kind was made by the answer. The only reference to increase of value that appears in the record is in the testimony of the defendant J. C. Petterson, which was taken after all the complainant's witnesses had testified: The witness was asked to state "the value of the land in this suit when he first became acquainted with it, and its present value (at the time of asking the question), and if the same had increased in value. In reply the witness stated that when he first became acquainted with the property it was worth $1.50 per acre, but at the time of testifying that it was worth about $5,000. This question was objectionable for many reasons, and if objection had been made in the court below, it and the answer to it should have been excluded from consideration. In the first place, the time inquired about was too remote. The witness had stated that he had been acquainted with the property fourteen or fifteen years. The original contract of purchase was made about six years and a half before the time of giving the testimony. Therefore he was asked to state the value of the property at a period seven or eight years anterior to the purchase by Bonifay from Dowd, and its value at the time of testifying, which was about eight months after the suit was brought. If the testimony as to increase of value was admissible at all, it should have been limited to some time at or near the time of the

Bonifay contract and the bringing of suit. For aught that appears in the record, this remarkable increase of value may have all occurred between the time of the witness' first acquaintance with the property and the contract of purchase by Bonifay, or it might have occurred between the bringing of the suit and the time of taking the testimony. But the greatest—the vital —objection to this testimony is, that it is not relevant to any issue in the case, no defense being made upon an increase in value of the property. It is an established rule of chancery practice, and of pleading and practice generally, that the *allegata* and *probata* must correspond. However full and convincing may be the proof as to any essential fact, unless the fact is averred, proof alone is insufficient. Perdue vs. Brooks, 95 Ala. 611, 11 South. Rep. 282. All evidence offered in a case should correspond with the allegations and be confined to the issues. 1 Greenleaf on Evidence, sec. 51. "The requirement　*　that the cause of action or the affirmative defense must be stated as it actually is, and that the proofs must establish it as stated, is involved in the very theory of pleading." 2 Rice on Evidence, sec. 292, citing Pomeroy's Remedies and Remedial Rights, sec. 554. A litigant has a right to rely upon his adversary's pleading as indicating the case he is to meet. Otherwise, pleadings would serve no useful purpose except to entrap and mislead the adversary. Southwick vs. First National Bank, 61 How. Pr. 164; Romeyn vs. Sickles, 108, N. Y. 650, 15 N. E. Rep. 698. Without committing ourselves upon the point, under the circumstances of this case whether the question of appreciation in value of the property could be urged as a defense to the relief sought, we are of the opinion that we can not consider any such

defense in the state of the pleadings as shown by the record.

It is also contended by appellee, the Pensacola, Gulf, Land and Development Company, that the decree for specific performance should not pass against it, because it holds its title by a grant from a married woman, and the equity sought to be enforced had its origin and partly accrued before the legal title vested in such married woman. The cases of Lewis vs. Yale, 4 Fla. 418, and Goss vs. Furman, 21 Fla. 406, are cited to support the contention. It was decided in those cases, especially the last named, that a decree for specific performance could not be rendered against a married woman upon her executory contract for the sale of lands. This decision was but an application of the general principle that a married woman is disabled by reason of her coverture to enter into any contract that will bind her either in law or in equity so as to authorize a personal judgment against her. In this case the contract sought to be enforced was not made by a married woman. The only married woman defendant had parted with her title before suit was brought. She was a nominal party to the proceedings, and no relief is prayed against her. Her only connection with the case is, that the title to the property about which the suit was brought was once vested in her, and is held by her grantee. We do not think a vendee of real estate who purchases with notice of the equities of an occupying tenant can defeat specific performance of the contract of a former grantor because of the intervention of the title of a married woman between him and such grantor. Such a rule does not seem reasonable to us upon principle, and no

precedent in point has been shown us or discovered by us.

The decree of the Circuit Court is reversed, with directions that a decree be entered granting the relief prayed for in the bill of complaint, upon the payment by the complainant to the defendant, the Pensacola, Gulf, Land and Development Company, of the amount of purchase money due upon the contract of purchase of E. C. Bonifay from C. Dowd and George Stallsworth, with interest from October 18th, 1884, until January 24th, 1889, and all the costs which accrued in this cause in the Circuit Court up to said last named date. It is ordered that all other costs in the cause not directed to be paid by the complainant, be paid by the defendant; and that appellees pay the cost of this appeal. Wherever the word *complainant* is used in this opinion it means the appellant, and the word *defendant*, without naming him, is used it means the appellee, the Pensacola, Gulf, Land and Development Company.